# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA                                                              APPELLEE

V.                                                                        CASE NO. 1:10CR67-NBB-DAS

WILLIAM I. CARROLL                                                                    APPELLANT

## MEMORANDUM OPINION

This cause comes before the court on William I. Carroll's appeal of the magistrate judge's finding of guilt for a misdemeanor violation of 36 C.F.R. § 2.32(a)(3), specifically, interfering with an agency function by providing false information during the investigation of a violation of federal law. Upon due consideration of the briefing, exhibits, and applicable authority, the court is ready to rule.

### Factual and Procedural Background

This case involves allegations that Carroll gave false statements to Natchez Trace Park Ranger James Purcell during the investigation of an alleged assault on Carroll that occurred on the Natchez Trace Parkway near Kosciusko. Purcell and the prosecution contend that Carroll lied about being assaulted and that the wounds he suffered during the alleged assault were self-inflicted. After a bench trial of the misdemeanor charge, the magistrate judge found Carroll guilty and sentenced him to one year of probation. Carroll timely filed his notice of appeal.

Carroll testified at trial that while traveling down the Natchez Trace to his brother's house around midnight on the morning in question, he noticed a Chevrolet Tahoe apparently stranded on the side of the road with its emergency flashers on. A lady was standing next to the vehicle. Carroll turned around and came back to help her and stopped his truck in front of the Tahoe. He exited his truck but left the engine running. At that point, Carroll alleges he noticed a

man standing on the passenger's side of the Tahoe. According to Carroll, a second man wielding a revolver then approached Carroll from the back of Carroll's truck and threatened to rob him.

Carroll, a black belt in karate, asserts that he wrestled the man into the back of his truck, making a dent in the truck. He also allegedly hit the man in the groin, causing the assailant to go limp. Carroll asserts he was not thrown to the ground during this exchange but was hit in the back of the head. The assailant allegedly fired the revolver during the altercation but hit no one, and the revolver fell to the ground.

Carroll alleges that the man standing beside the Tahoe then entered the fray, and according to Carroll, he hit the man once and then wrestled him to the ground. Carroll says he was on top of the second assailant when the two hit the ground. Carroll alleges he suffered three cut injuries with a knife during this second assault. He stated that he believed the female inflicted the knife wounds while he struggled with the second assailant.

As soon as the second male assailant released him, Carroll asserts he entered his truck and left the scene. Although his truck was parked nose to nose with the Tahoe, Carroll alleges the parking alignment was offset so that he was able to pull straight forward and escape without spinning his wheels in the gravel shoulder of the paved road.

Carroll asserts that from the time he stopped on the Trace until the time he left, approximately a minute and a half elapsed. He estimates the total time of the confrontation to be about thirty to forty-five seconds. In addition to the aforementioned knife wounds, Carroll suffered a head injury consisting of a "goose egg" on the back of his head and swelling around his eyes. His shirt was ripped during the scuffle, and all but two buttons were pulled off the shirt.

Upon leaving the scene, Carroll, who is anemic, decided to drive to his house then to the hospital rather than call 911 and wait for an ambulance. He asserts he believed he could get treatment faster if he transported himself rather than wait for an ambulance to come from Kosciusko, pick him up, and then return to Kosciusko. At the time of this incident, Carroll was a nurse at Montfort Jones Memorial Hospital in Kosciusko, which is where he was treated. He asserts that, as a nurse, he knew how to slow the bleeding from his injuries while driving by applying pressure to the affected area. On his way to Kosciusko, Carroll sent a text message to his next door neighbor, Shon Denny, asking him to transport him from home to the hospital. This detour took Carroll only about a fourth of a mile out of the way.

Ranger Purcell testified that at approximately 4:30 a.m. on the morning in question, he was notified of Carroll's alleged assault and went to the hospital to interview Carroll. Purcell stated that Carroll was cooperative and answered his questions. Purcell contends that he initially believed Carroll's rendition of the incident.

After the interview, Carroll asked his supervisor, Joe Mangino, to visit the crime scene and look for evidence. Mangino found no tire marks, blood, or other evidence. Later the same day, Purcell drove by the scene and likewise found no evidence of a crime though he never left his patrol car during the search, choosing instead to drive very slowly for approximately a five-mile stretch near the scene of the alleged assault as described by Carroll, from mile marker 130 to 135. Purcell also issued an alert for law enforcement to be on the lookout for the assailants' vehicle but never received a response. At some point during the investigation, Purcell decided that Carroll lied about the entire assault and attempted robbery and theorized that Carroll inflicted the knife wounds on himself.

Purcell then conducted an interview with Carroll's supervisors at the hospital and a second interview with Carroll at Carroll's residence. Purcell asked Carroll for permission to search his truck, and Carroll agreed. During the search, a fillet knife, alcohol pads, and blood were discovered. The fillet knife had blood on the blade. During the course of his two interviews with Carroll, Purcell also noticed extensive scarring on Carroll's forearms and upper arms. Carroll testified that the scars are attributable to injuries from barbed wire, an ax, and a chainsaw, all sustained while working on a farm.

Purcell confronted Carroll with his suspicions about the incident, including the lack of evidence at the scene, the lack of defensive wounds, the identical nature of the cuts, Carroll's failure to call 911, and his failure to drive directly to the hospital. Carroll's response to Purcell was simply "that he did not know." Purcell informed Carroll that he was going to issue a citation. Carroll replied, "Okay, I guess I'll just go ahead and pay the citation." When Purcell advised Carroll that the Park Service had spent a considerable amount of time and effort investigating the alleged assault, Carroll apologized for wasting their time and again stated he would pay the citation. Purcell testified at trial that he believed Carroll needed professional help, and that is why he issued the citation.

During the trial, Carroll called the treating emergency room physician, Dr. Brady Richardson, who was tendered and accepted as an expert in the field of emergency room medicine. Richardson acknowledged that he was not a forensic medical examiner and had no specific training on the subject of self-inflicted injuries. He testified that based on his observations, training, and experience, he could not determine whether the wounds were self-inflicted.

Carroll's neighbor who drove him to the hospital, Shon Denny, also testified briefly, but he had no direct knowledge of the assault.

Standard of Review

Federal Rule of Criminal Procedure 58(g)(2) governs an appeal from a magistrate judge's order or judgment. Rule 58(g)(2)(D) provides: "The defendant is not entitled to a trial de novo by a district judge. The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). Generally speaking, the appellate court reviews questions of law de novo and factual findings for clear error. *U.S. v. Hollingsworth*, 783 F.3d 556, 558 (5th Cir. 2015).

"The standard for reviewing a conviction allegedly based upon insufficient evidence is whether a reasonable jury could find that the evidence establishes the guilt of the defendant beyond a reasonable doubt." *U.S. v. Pennington*, 20 F.3d 593, 597 (5th Cir. 1994). The court reviews the evidence in the light most favorable to the government and draws all reasonable inferences in support of the verdict. *Id.* If the evidence viewed in this light "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, the conviction should be reversed." *Id.*

"[T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The relevant question is, instead, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.

## Analysis

Carroll was charged with and found guilty of a misdemeanor violation of 36 C.F.R. § 2.32(a)(3), specifically, interfering with an agency function by providing false information during the investigation of a violation of federal law. He argues that the government did not meet its burden of proving the offense charged beyond a reasonable doubt and also contends that the government did not adequately investigate the basis for the charges asserted.

The defendant asks this court to disregard the magistrate judge's findings and ruling and reverse his conviction. The court recognizes, however, that the magistrate judge, sitting as fact finder in this case, was in the better position to hear testimony, view evidence, judge the credibility of witnesses, draw reasonable inferences, and make determinations of guilt or innocence as he presided over the trial. The standard for examining the sufficiency of the evidence "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

This court has read the trial transcript, including the magistrate judge's rationale, and finds that the magistrate judge based his findings on sound reasoning. In setting forth the basis for his ruling, the magistrate judge explicitly stated that he did not find Carroll's testimony to be credible, as follows:

> And, Mr. Carroll . . . I watched you testify, and I listened to the questions. I watched. I was – I've been a lawyer for a long time. I've watched a lot of witnesses testify. I've sat on the bench and watched a lot of witnesses testify. And at the risk of offending you, I did not find your testimony credible.
>
> And it concerns me that – that – I am finding that the Government has convinced me beyond a reasonable doubt that you did not tell them the truth. And

> the only explanation for not telling them the truth, in my opinion, was that these wounds are self-inflicted.

It is axiomatic that "[w]itness credibility and the weight of the evidence are the exclusive province of the fact-finder." *U.S. v. Allen*, 587 F.3d 246, 256 (2009). The appellate court is not permitted to reassess credibility, as the fact finder is the sole judge of credibility and the weight to be given the testimony. *Jackson*, 443 U.S. at 319.

At the close of the trial, the magistrate judge explained his reasoning in thorough detail, noting the evidence that weighed most heavily on his decision. After reading the transcript and the parties' briefing, these are the same pieces of evidence which weigh on this court's decision as well.

First, the magistrate judge noted that the defendant did not call 911 despite being in a desperate hurry because of his anemia, and it seemed strange to the court that Carroll would take the time to text message a friend. This court finds this fact strange as well.

Second, the court noted that Carroll agreed to pay the citation. Carroll also apologized for wasting the rangers' time. The magistrate judge stated that he did not consider this a confession, "[b]ut neither is it a statement that [he thought] a true victim would likely make." The court further stated, "I think a true victim would still be adamant that those people are out there." This court agrees.

Third, the magistrate judge, though acknowledging that it is not particularly unusual to find blood on a fillet knife, found the fact that this evidence is consistent with the government's theory of the case, and the fact that it was found, with alcohol swabs, under the seat of Carroll's vehicle weighed in favor of a guilty verdict. This court shares the magistrate judge's opinion as to this evidence.

Fourth, the magistrate judge found it implausible that, even though Carroll is a "six-seven, 200-plus pound black belt," he had no defensive marks and no evidence of a confrontation with "two men, and one with a gun, and one woman with a knife." The magistrate judge found this set of circumstances bizarre, as does this court.

Finally, the magistrate judge stated that the matter that weighed most heavily on him were the scars on Carroll's arm, noting that they "are of great concern to me" and "disconcerting." The court was unconvinced by Carroll's explanation that he acquired the scars while working on a farm. As to the wounds allegedly obtained during the altercation on the Natchez Trace, the court found that Dr. Richardson's testimony did not rise to the level of expert testimony "in an area where he could convince me that he's an expert to determine whether the wounds were self-inflicted or not." Further, Dr. Richardson himself testified that he could not determine the cause of the wounds.

The appellant has offered an explanation for each of the points set forth by the government and alternative interpretations for the evidence which persuaded the magistrate judge to find Carroll guilty of the charge against him. As mentioned, Carroll asserts that the scars on his arm were acquired while working on a farm. Among his other arguments, Carroll asserts that he did not call 911 because he thought he could get to the hospital more quickly on his own and that the blood on the fillet knife was simply from the knife's general, intended use. Carroll's explanations, while not entirely implausible, are not as persuasive as the government's position or the magistrate court's rationale, especially when the evidence is examined as a whole and in the light most favorable to the verdict.

The court is likewise unpersuaded by Carroll's argument that the investigation was inadequate. Carroll argues, among other things, that the rangers did not examine his torn or bloody clothes at the hospital; but as the magistrate judge noted, at the time of the first interview in the hospital, the ranger had no reason to disbelieve Carroll and thus no reason to look at his clothes. Carroll also takes issue with Ranger Purcell's driving by the site of the alleged incident without exiting his car, but the court is unconvinced that such action was necessary. Ranger Purcell contacted his supervisor, Ranger Joe Mangino, immediately after his interview with Carroll and asked him to drive to the scene and check for evidence such as tire marks, blood, or any evidence that might lead to the assailants. Mangino found no evidence. Later that day, Purcell drove to the scene himself. He testified that he drove as slowly as his patrol vehicle would go, searching a five-mile radius from where Carroll alleges the incident occurred, beginning at mile marker 135 and continuing to mile marker 130. He then turned around and repeated the process. He found no tire marks, skid marks, blood, or other evidence of the alleged altercation. Despite Purcell's failure to exit his vehicle during his search, the court finds Purcell's efforts reasonable, particularly considering that Mangino searched the area as well and likewise found no evidence.

## Conclusion

Viewing the evidence in the light most favorable to the government, drawing all reasonable inferences in support of the verdict, and considering the magistrate judge's finding that Carroll's testimony was not credible – a finding which this court cannot overrule – the court finds that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.

9

The magistrate judge's ruling should be affirmed. A separate order in accord with this opinion shall issue this day.

This, the 29th day of January, 2016.

    /s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**